SILLS CUMMIS & GROSS P.C.
Valerie A. Hamilton, Esq.
600 College Road East
Princeton, NJ 08540
(609) 227-4600
vhamilton@sillscummis.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------------x
JAMES R. BURRITT, Assignee for the
Benefit of Creditors of RAM Nationwide,
Inc., RAM Motor Freight, Inc. and RAM
Transportation Services, Inc.,

                Plaintiff,

-against-

FRAMAUR ASSOCIATES, LLC,

                Defendant.
---------------------------------------------------------------x

Civil Action No.: 16-cv-_____

**COMPLAINT**

Plaintiff, James R. Burritt, as Assignee for the Benefit of Creditors of RAM Nationwide, Inc. ("RAM Nationwide"), RAM Motor Freight, Inc. ("RAM Motor") and RAM Transportation Services, Inc. ("RAM Transport") (collectively, "RAM"), by and through his attorneys, Sills Cummis & Gross P.C., as and for his Complaint against Defendant, Framaur Associates, LLC ("Framaur"), allege as follows:

**NATURE OF THE ACTION**

1. This action concerns Framaur's refusal to pay RAM money that is due and owing from Framaur to RAM for trucking services RAM provided to Framaur.

2. Upon information and belief, Framaur is engaged in the shipping brokerage business.

3. Upon information and belief, approximately five years ago, Framaur entered into a lucrative agreement with the MillerCoors brewing company to provide shipping for MillerCoors products.

4. At or around that time, Framaur contacted RAM Nationwide to inquire about RAM providing the trucking and shipping services for MillerCoors on behalf of Framaur.

5. RAM Nationwide is the parent company of two wholly-owned subsidiaries: RAM Motor Freight Inc. and RAM Transportation, Inc.

6. RAM Motor Freight is the trucking division of the RAM companies and RAM Transportation is the shipping brokerage division.

7. Ultimately, in or about 2010, RAM and Framaur came to an oral agreement (as modified from time to time, the "Agreement") pursuant to which Framaur would arrange shipments on behalf of MillerCoors and RAM, through its trucking and brokerage divisions (RAM Motor and RAM Transport), would be the company that would actually carry out the pick-up and delivery of the MillerCoors product. The parties agreed on the lanes (loads to and from specific locations) that RAM would cover, most of which called for product pick-up in Ohio and delivery generally to New York and Pennsylvania. The parties also agreed to the pricing for each such lane.

8. Subsequently, RAM fulfilled its obligations by retrieving the shipments and successfully transporting them as instructed.

9. RAM and Framaur continued to do business for the next several years under the same general arrangement and in accordance with the Agreement; however, over the years, on occasion, the parties orally modified the Agreement by increasing rates and adding certain lanes.

10. In or about March 2015, the parties agreed to a rate increase for RAM's services.

11. RAM continued to provide services to Framaur pursuant to the Agreement and the agreed-upon 2015 rate increases, and Framaur accepted those services.

12. RAM duly and timely sent invoices to Framaur in connection with the services provided by RAM.

13. Framaur, upon information and belief, received the invoices and did not object to the invoices.

14. Framaur, however, has refused to pay RAM $881,141.33 that is due and owed to RAM by Framaur for the services RAM rendered for Framaur pursuant to the parties' Agreement, as modified from time to time.

15. Framaur has failed to pay RAM for the transport of MillerCoors shipments at issue despite the fact that, upon information and belief, Framaur has already collected payment from MillerCoors for the delivered goods.

16. On September 15, 2015, RAM discontinued all business operations and each of the RAM companies commenced liquidation proceedings through the assignment for the benefit of creditors in the Hamilton County, Ohio Court of Common Pleas, Probate Division.

17. On September 15, 2015, James Burritt was designated the "Assignee" in each of the assignments for benefit of creditors for each of the RAM companies and, as such, all assets of the RAM companies were assigned to the Assignee and Letters of Authority were issued to Plaintiff, as Assignee for each of the RAM companies, thereby authorizing Plaintiff to act on behalf of the RAM companies.

18. Plaintiff is entitled to judgment in the amount of $881,141.33 together with allowable costs and interests thereon.

## THE PARTIES

19. Plaintiff, James R. Burritt, is the Assignee of RAM Nationwide, RAM Motor Freight and RAM Transportation. Plaintiff has a principal place of business in Knoxville, Tennessee.

20. Upon information and belief, defendant, Framaur Associates LLC, is a New Jersey limited liability company with its principal place of business located at 332 Applegarth Road, Monroe, New Jersey 08831.

21. Upon information and belief, Framaur has a single member, Thomas D'Agostino, an individual, who currently resides at 12 Schindler Lane, Monroe, New Jersey 08831.

## JURISDICTION

22. This Court has jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1332, as the action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## THE PARTIES' CONTRACT

23. RAM and Framaur did business together for more than five years.

24. Framaur retained RAM to provide shipping services for certain clients, including MillerCoors.

25. As set forth above, the parties entered into the Agreement for RAM to provide shipping services for Framaur.

26. Framaur accepted RAM's services and often praised the service it received from RAM.

27. RAM sent monthly invoices to Framaur seeking payment for services rendered.

28. Framaur accepted such invoices without objection.

29. Over the course of the parties' business relationship, they periodically modified their Agreement by increasing the rate Framaur would pay for RAM's services.

30. In late 2013, RAM had significant aged receivables due and owing from Framaur that were in excess of 60 days past due.

31. In early 2014, RAM worked with Framaur to resolve the situation. Framaur made payments to reduce the age of its payables to RAM and agreed that, going forward, Framaur would not allow the age of its payables to RAM to exceed a maximum of 60 days.

32. Despite its agreement, Framaur again fell behind in its payments to RAM and exceeded the 60-day maximum to which it had agreed.

33. By December 2014, Framaur had accrued a balance in excess of $100,000.00 that was due and owing for more than 60 days.

34. Framaur assured RAM that it would take the necessary steps to keep more current with its payments to RAM and to stay within the agreed-upon 60 day arrears maximum.

35. Among other things, Framaur agreed to pay future invoices to RAM by wire transfer.

36. In or around March 2015, the parties discussed increasing the rates Framaur would pay for RAM's services.

37. On or about March 6, 2015, Framaur's Vice President, Thomas D'Agostino, Jr., offered to pay new, higher rates for RAM's services, effective on and after March 9, 2015, and RAM accepted the new rates.

38. Thereafter, RAM continued to provide shipping services for Framaur and invoiced Framaur for its services at the agreed-upon 2015 rates.

39. Framaur accepted and praised the service it received from RAM.

40. RAM continued to send monthly invoices to Framaur for its services.

41. Framaur accepted these invoices without objection.

## FRAMAUR'S FAILURE TO PAY

42. By April 2015, Framaur had again fallen significantly behind in its payments to RAM.

43. Framaur acknowledged its indebtedness to RAM, but requested patience as it tried to secure financing and attempted to resolve issues relating to payments from its own clients.

44. RAM grew increasingly more concerned about Framaur's aged receivables and the significant sums owed began to negatively impact RAM's business.

45. By mid-July 2015, Framaur owed RAM in excess of $797,000, and more than $210,000 of that sum had been owed for more than 70 days.

46. RAM continued to provide Framaur with services through mid-August 2015.

47. Since the Agreement was entered, RAM has carried thousands of shipments of MillerCoors products on behalf of Framaur. Framaur arranged the shipments and, therefore, was aware of each of these shipments.

48. All shipments for which Framaur contracted RAM's services were successfully delivered to and accepted by the various consignees in the New York-Pennsylvania region.

49. Following each shipment, RAM invoiced Framaur for all amounts due under the Agreement at the then-applicable agreed-upon rates.

50. Upon information and belief, Framaur has invoiced and been paid by MillerCoors for each shipment of MillerCoors products that Framaur arranged for RAM to haul.

51. Framaur has had the opportunity to review all of the invoices issued by RAM. Framaur has never claimed any deficiencies or errors in RAM's invoices.

52. Throughout 2014 and 2015, Framaur consistently made payments beyond the 60-day agreed-upon payment period.

53. In mid-2015, RAM notified Framaur that it would no longer transport MillerCoors products due to Framaur's mounting payment defaults.

54. To date, Framaur has failed to pay the billed collective sum of $881,141.33 that is due and owing from Framaur to RAM.

## COUNT I

### (Breach of Contract)

55. Each of the foregoing allegations is repeated and restated as if set forth fully herein.

56. The Agreement is a valid and enforceable contract.

57. RAM has fully performed under the terms of the Agreement by rendering services to Framaur and transporting the various shipments Framaur arranged for RAM to haul.

58. Framaur breached the Agreement by failing to pay RAM for its services.

59. As a result of Framaur's breach, RAM has suffered damages in an amount to be proven at trial, but not less than $881,141.33.

## COUNT II

### (Unjust Enrichment)

60. Each of the foregoing allegations is repeated and restated as if set forth fully herein.

61. Framaur requested that RAM render trucking and shipping services on its behalf.

62. RAM provided trucking and shipping services requested by Framaur.

63. The value of the services rendered by RAM is in excess of $881,141.33.

64. Framaur accepted RAM's services.

65. Framaur has failed and refused to pay for RAM's services.

66. By accepting RAM's services and failing to pay for them, Framaur has been unjustly enriched.

67. Moreover, upon information and belief, MillerCoors has compensated Framaur for goods hauled and delivered by RAM, but Framaur has failed and refused to pay RAM for transporting and delivering such goods.

68. By invoicing, accepting and retaining payments from MillerCoors without paying RAM for its services, Framaur has also been unjustly enriched.

69. Framaur's acceptance of RAM's services and its retention of payments from MillerCoors is at the expense of RAM, which expended the time, money and other resources to transport and deliver the various MillerCoors shipments that were arranged and requested of RAM by Framaur.

70. Given the time, money and other resources expended by RAM in response to Framaur's request for services, RAM had a reasonable expectation of compensation.

71. Framaur was aware of the benefit being conferred upon it by RAM because Framaur arranged the shipments, received invoices from RAM for its shipment services, and invoiced MillerCoors for each of the shipments delivered by RAM.

72. Allowing Framaur to receive the benefit of RAM's services and/or to retain payments made to it by MillerCoors for the shipping services RAM provided would be inequitable and to the detriment of RAM, in an amount to be proven at trial, but not less than $881,141.33.

## COUNT III

### (Account Stated)

73. Each of the foregoing allegations is repeated and restated as if set forth fully herein.

74. RAM provided services to Framaur for approximately five years.

75. Framaur requested and accepted RAM's services.

76. RAM regularly sent and delivered invoices to Framaur for its services.

77. RAM sent invoices for sums owed to it by Framaur, including the $881,141.33 sought in this action.

78. Framaur received RAM's invoices.

79. Other than requesting a $200.00 credit with respect to one single invoice (which it received from RAM), Framaur never objected to or expressed other protest with respect to RAM's invoices or the amounts stated therein.

80. In fact, Framaur regularly acknowledged the debts it owed to RAM.

81. Accordingly, an account has been duly stated between RAM and Framaur for services rendered by RAM on Framaur's behalf.

82. Upon such account stated, the amount of $881,141.33 plus interest is due and owing from Framaur to RAM.

83. As a result of the foregoing, RAM has suffered damages in an amount to be determined at trial but no less than $881,141.33, together with interest and all other costs and disbursements.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Framaur as follows:

(a) On all causes of action, judgment in the amount of $881,141.33, plus interest, costs and attorneys' fees;

(b) Establishing a constructive trust for all amounts received by Framaur from MillerCoors that should have been remitted to RAM;

(c) Fixing the proper amount of pre- and post-judgment interest; and

(d) Such further and other relief as the Court may deem just and proper.

Dated: February 29, 2016
Princeton, New Jersey

SILLS CUMMIS & GROSS P.C.

By: /s/ Valerie A. Hamilton
Valerie A. Hamilton, Esq.

600 College Road East
Princeton, NJ 08540
vhamilton@sillscummis.com
Phone: (609) 227-4608

*Attorneys for Plaintiff, James R. Burritt,
Assignee for the Benefit of Creditors of
RAM Nationwide, Inc., RAM Motor Freight, Inc.
and RAM Transportation Services, Inc.*